UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY SALAMANGO, and
BEVERLY SALAMANGO,

              Plaintiffs,

                                   Case No. 2:14-cv-10189

vs.                                 HON. GERSHWIN A. DRAIN

NCSPLUS INCORPORATED,

              Defendant.

_____/

## ORDER GRANTING IN PART PLAINTIFFS' PETITION FOR ATTORNEYS' FEES PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT [#17]

### I.    INTRODUCTION

Before the Court is Anthony and Beverly Salamango's ("Plaintiffs") Petition for Attorneys' Fees [#17], filed on June 23, 2014. Plaintiffs request $6,307.00 in attorney's fees, representing 3.5 hours for attorney Larry Smith ("Smith") at $395.00 per hour, 13.3 hours for attorney David Marco ("Marco") at $340.00 per hour, and 3.5 hours for a paralegal at $115.00 per hour. Plaintiffs also request $400.00 in costs for the complaint-filing fee.

NCSPlus Inc. ("Defendant") filed its Response in Opposition to Plaintiff's Petition for Attorney's Fees [#19] on July 7, 2014. Defendant did not object to Plaintiffs' *entitlement* to either attorney's fees or the cost of filing the complaint. Therefore, the Court focuses on Defendant's contentions that Plaintiffs cannot recover for hours spent (1) on needless or duplicative tasks, (2) on clerical tasks, (3) by multiple attorneys, and (4) due to Plaintiffs' lack of good-faith efforts to settle attorney's fees out of court. Defendant also argues that Plaintiffs cannot recover the claimed billing rates because (1) out-of-district evidence of reasonable rates, such as the Laffey Matrix and judgments in other districts, are irrelevant in this district; and (2)

1

the biographical data for Plaintiffs' attorneys does not establish how their experience, qualifications, and hourly rates compare with similarly situated in-district attorneys. For the above reasons, Defendant requests that the Court reduce the amount of attorney's fees to $2,275.00, representing a 50% reduction in the claimed hours and reduction of the claimed hourly rates from $395.00, $340.00, and $115.00 (for the paralegal) to $250.00 for each attorney and $100.00 for the paralegal.

Upon review of the parties' submissions, the Court finds that oral argument will not aid in the resolution of this matter and will cancel the hearing set for August 11, 2014. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons below, the Court will award $5,397.50 for attorney's fees and $400.00 in costs.

## II.    BACKGROUND

On May 19, 2014, Plaintiffs accepted Defendant's Offer of Judgment for the maximum statutory amount of $2,001.00. Defendant also agreed to reimburse "reasonable attorneys' fees and costs, to be agreed upon by the parties, and if unable to do so, to be determined by this Honorable Court." The parties were unable to agree on the amount of attorney's fees—Plaintiffs allege that they employed "best efforts to resolve the issue" and that "Defendant has made no attempt to reach a resolution," while Defendant alleges that Plaintiffs did not engage in "good faith efforts to resolve the fee dispute" when their attorneys "patently refused to provide their time records prior to filing the fee Petition so Defendant could gauge the 'reasonableness' of the requested fee."

In support of their claimed hourly rates, Plaintiffs offers the Laffey Matrix, which is an official statement of market billing rates for attorneys and paralegals who practice federal law. The Laffey Matrix was created by the Civil Division of the United States Attorney's Office and

is based on the practitioner's number of years of experience. According to the Laffey Matrix, Plaintiffs' claimed rates of $395.00, $340.00, and $115.00 fall below the recognized rates of $510.00, $450.00, and $145.00, respectively. Plaintiffs also include their attorneys' biographies indicating that Smith was admitted to the bar in 1993, Marco was admitted in 2000, and both attorneys currently practice consumer litigation. Plaintiffs also provide their attorneys' time sheets and the judgments of courts, both within and outside the Eastern District of Michigan, awarding attorney's fees in similar cases.

In support of its response, Defendant stated that the State Bar of Michigan's 2011 Economics of Law Practice Survey reports average hourly rates of $275.00 and $250.00 for Michigan attorneys of Smith's and Marco's experience and skill.

## III.  LAW & ANALYSIS

The "lodestar" method of calculating attorney's fees is "the guiding light of our fee-shifting jurisprudence."[1] *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). The "lodestar amount" is the reasonable amount of attorney's fees, calculated as a reasonable hourly rate multiplied by the number of hours reasonably expended on the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). There is a strong presumption that the lodestar amount represents a "reasonable" fee. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1987).

Upward adjustment of the lodestar amount is proper only in "rare" and "exceptional" cases; the party seeking the increase bears the burden of providing "specific evidence" in support. *Id.* at 553-54, 565. Factors such as the novelty and complexity of the issues, special

---

[1] The Third Circuit first developed the "lodestar" method in a 1973 antitrust case under the Clayton Act—*Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973).

skill and experience of counsel, quality of representation, and results obtained are presumably incorporated into the lodestar amount; therefore, such factors cannot serve as independent grounds for upward adjustment. *Id.* at 565. Based on the following analysis, the Court grants Plaintiffs' petition in part.

### A. Reasonable Hourly Rate

A reasonable hourly rate must be calculated according to the "prevailing market rate" in the "relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The "relevant community" is "the legal community within [the court of record's] territorial jurisdiction." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). The "prevailing market rate" is one that is comparable to rates in the "relevant community" for similar services by lawyers of reasonably comparable skill, experience and reputation. *Stenson*, 465 U.S. at 895 n.11. The going rate should be no higher than necessary "to encourage competent lawyers to undertake the representation in question." *Coulter v. State of Tenn.*, 805 F.2d 146, 149 (6th Cir. 1986).

In the instant case, Plaintiffs refer to the incorrect "relevant community" of the District of Columbia, instead of the Eastern District of Michigan (or even the State of Michigan). Plaintiffs offer the Laffey Matrix because (1) "the case at bar was filed pursuant to . . . the FDCPA," (2) the FDCPA is "a federal remedial statute," and (3) the Laffey Matrix compares rates of "attorneys practicing federal claims with fee-shifting provisions." Pls.' Pet. for Attorneys' Fees 8, ECF No. 17. Plaintiffs fail to recognize, however, that the Laffey Matrix is "evidence of prevailing market rates for litigation counsel in the *Washington, D.C. area*" prepared by "the United States Attorney's Office [in] the *District of Columbia*" after adjusting for "the cost of living for the *Washington, D.C. area*." Pls.' Ex. D, ECF No. 17-4 (emphasis added). Plaintiffs

have not offered any evidence that the hourly rates in the D.C. area are comparable to hourly rates in this District or State or that local hourly rates are insufficient.  Moreover, as Plaintiffs eventually noted (for the sole purpose of proving similar awards in similar cases), "[T]here can be no better indication as to the reasonableness of one's hourly rates than the affirmation of those hourly rates by myriad courts *in the geographical vicinity*" or "*in this District*."[2]  Pls.' Pet. for Attorneys' Fees 9, 10 (emphasis added).  Therefore, under the definition of "relevant community" in *Adcock-Ladd*, the Laffey Matrix is not instructive to the instant case.

Even if Plaintiffs argue that *Adcock–Ladd* stands for the proposition that foreign attorneys performing work outside the venue of record may bill at foreign rates, that case is distinguishable in that regard.  In *Adcock-Ladd*, the plaintiff lived in Tennessee but had to retain an attorney in Washington, D.C., to depose a key witness who was a federal-government official there.  *Adcock-Ladd*, 227 F.3d at 351.  The plaintiff offered the foreign attorney's foreign rate (which was higher than the local Tennessee rate) as the proper measure of attorney's fees.  *Id.* at 346-47.  The district court, relying on precedent, summarily rejected this proposal and applied the local rate.  *Id.* at 351.

On appeal, the Sixth Circuit reversed, holding that "[t]he trial court erroneously concluded that the hourly rate prevailing within the venue of the court [of record] will *always* constitute the . . . reasonable hourly rate for legal work performed by a foreign counselor in a [foreign] venue . . . ."  *Id.* at 350 (emphasis in original).  The court of appeals reasoned that the relevant precedent only applies to foreign attorneys "who volitionally elect to represent a party,"

---

[2]  Actually, Plaintiffs unnecessarily limited themselves to the "geographical vicinity."  When looking at awards made in similar cases, the cases must only involve similar litigation; there is no limitation on their geographic location.  *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 719 (5th Cir. 1974), *abrogated on other grounds*.

thereby allowing them "to reject the commission if [they] deem[] unattractive the customary local fee standards within the forum court's territorial jurisdiction." *Id.* at 351.

The instant case is distinguishable for multiple reasons. First, unlike the plaintiff in *Adcock-Ladd* who had no choice but to depose the witness in Washington, D.C., using foreign counsel, Plaintiffs have not offered any evidence that the work performed by their attorneys in Chicago could not have been performed in Michigan. Second, the Sixth Circuit's main concern was that the district court "failed to perform a proper lodestar analysis" by applying the local Tennessee rate "simply because *Adcock-Ladd* had inaugurated her judicial complaint in that geographical region." *Id.* at 350. In the instant case, Plaintiffs have not presented the Court with any evidence that the Laffey Matrix is applicable in Michigan or that Michigan rates are not instructive. Accordingly, the Court declines to arbitrarily adopt an out-of-district estimate as evidence of reasonable in-district rates.

In addition, Plaintiffs refer to the incorrect legal community of "federal law" instead of "consumer law." Plaintiffs contend that "[t]he hourly rates requested . . . are commensurate with the prevailing rates for attorneys that practice federal law." Pls.' Pet. for Attorneys' Fees 8. However, the term "federal law" is too broad. For example, all of the following types of attorneys practice "federal law" under fee-shifting statutes, but it cannot be said that any of them offer "similar services" or possess "reasonably comparable skill:" civil rights (42 U.S.C. § 1988(b)), patent infringement (35 U.S.C. § 285), railroad/airline labor relations (45 U.S.C. § 153(p)), and commodity futures trading (7 U.S.C. § 18(e)). *See also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260-61 nn.33-35 (1975) (compiling numerous examples of otherwise unrelated federal fee-shifting statutes); Peter N. Cubita et al., *Awards of Attorney's Fees in the Federal Courts*, 56 ST. JOHN'S L. REV. 277, 287 n.34 (1982), *available at*

http://scholarship.law.stjohns.edu/cgi/viewcontent.cgi?article=2273&context=lawreview (same). Moreover, as Plaintiffs eventually noted (for the sole purpose of proving similar awards in similar cases), "For attorneys that specialize in *consumer rights* litigation, and that rely on the fee-shifting provisions of various *consumer statutes* to establish their attorneys' fees, there can be no better indication [of] reasonableness" than "*consumer litigation* in this District." Pls.' Pet. for Attorneys' Fees 9, 10 (emphasis added). Finally, the biographies of Plaintiffs' attorneys do not even contain the word "federal"—Smith describes himself as "a consumer attorney," and Marco states that he practices "consumer litigation." Pls.' Ex. E, ECF No. 17-5. Therefore, under the definition of "prevailing market rate" in *Stenson*, the Laffey Matrix covers too broad a cross-section of the legal community to be instructive to the instant case.

Furthermore, Plaintiffs fail to establish that the higher rate of their foreign attorneys is reasonable. If a plaintiff employs foreign counsel whose "home" rate exceeds the reasonable "local" rate, the plaintiff has the additional burden of establishing that (1) the hiring of foreign counsel was reasonably necessary in the first instance, and (2) the higher rate sought is reasonable for that attorney's degree of skill, experience, and reputation. *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995). In the instant case, the "home" rates of Plaintiffs' foreign attorneys exceed the "local" Michigan rates: As will be discussed in greater detail below, Plaintiffs' attorneys normally charge $395.00 and $340.00 in Chicago/Illinois, compared to the corresponding Michigan rates of $348.00 and $317.00, respectively. However, Plaintiffs did not offer any reasons why local consumer-rights attorneys were incompetent, unable, or unavailable to represent Plaintiffs, or why Plaintiffs' chosen attorneys were reasonably necessary. Furthermore, notwithstanding their failure to show necessity, Plaintiffs purportedly established that these higher rates were reasonable because their attorneys were comparable to the D.C.

attorneys of the Laffey Matrix in terms of years of experience. Pls.' Pet. for Attorneys' Fees 9. However, as previously discussed, any comparison based superficially on the practice of "federal law" is imprecise.

Notwithstanding the fact that Plaintiffs' attorneys are foreign, Plaintiffs have never alleged, and have failed to present evidence, that the instant case was anything more than a "run of the mill" FDCPA case. Therefore, the "prevailing market rate" would have applied to Plaintiffs' attorneys even if they were based locally. *See Coulter*, 805 F.2d at 149 ("Under [fee-shifting] statutes[,] a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate."). Plaintiffs have not contended that either their particular circumstances required extraordinary skill, their attorneys were exceptionally skilled other than from years of experience, or any such exceptional skill resulted in an expedited or extraordinary resolution. Therefore, Plaintiffs are restricted to customary rates in this District or State.

As further evidence of reasonable hourly rates, Plaintiffs offer six in-district cases in which the court adopted the plaintiff's calculation of attorney's fees in similar cases, but these cases are of limited utility. While it is well-settled that the amount of attorney's fees awarded in similar cases can help to establish a reasonable hourly rate, *Del. Valley Citizens*, 478 U.S. at 568, only one of the six cases is even marginally instructive. In the other five cases, like in the instant case, the plaintiffs employed the Laffey Matrix without explaining its relevance or applicability in Michigan. *See Johnson v. Nelms*, No. 12-CV-14637, Pl.'s Mot. for Default J. 5-7, ECF No. 19; *Rohn v. Commercial Recovery Sys., Inc.*, No. 13-CV-10780, Pl.'s Corrected Mot. for Default J. 6-8, ECF No. 9; *Lodge v. Cred X Debt Recovery, LLC*, No. 13-CV-11785, Pl.'s Mot. for Default J. 7-8, ECF No. 9; *Hooker v. Goldstein & Assocs., LLC*, No. 12-CV-12232, Pl.'s Mot.

for Default J. 7-8, ECF No. 15; *Burrows v. Hunt*, No. 11-CV-11511, Pl.'s Mot. for Default J. 5-6,

ECF No. 15. In the sixth case, the plaintiff simply presented his attorney's hourly rate without

presenting *any* evidence of reasonableness. *See McIntosh v. Check Resolution Serv., Inc.*, No.

10-CV-14895, Pl.'s Mot. for Default J. 7, ECF No. 7.

Moreover, the fee awards in all six cases arose from entry of default judgments; there

were no adversarial challenges to the reasonableness of those plaintiffs' calculations. Finally,

those default judgments are in fact not even unconditionally binding on the defaulting

defendants, let alone persuasive to courts in this District, because courts may set aside default

judgments for good cause. FED. R. CIV. P. 55(c). Those cases do not establish the Laffey

Matrix's suitability any more than the instant petition does.[3]

The Court finds the State Bar of Michigan's 2014 Economics of Law Practice survey to

be instructive.[4] *See Lamar Adver. Co. v. Charter Twp. of Van Buren*, 178 F. App'x 498, 499-500

(6th Cir. 2006) (affirming district court's reliance on the 2003 survey edition in a § 1983 case);

*Meier v. Green*, No. 07-CV-11410, 2007 WL 2909418, at *2 (E.D. Mich. Oct. 5, 2007) (relying

on same in a Title VII case); *Garcia v. Renaissance Global Logistics, LLC*, No. 10-CV-13122,

2012 WL 1130543, at *3 (E.D. Mich. Apr. 4, 2012) (relying on the 2010 survey edition in a

---

[3] Aside from the in-district cases, Plaintiffs also offer judgments from 45 out-of-district cases. However, from what the Court could ascertain from the judgments themselves, default judgment accounted for the vast majority of those cases. Also, Plaintiffs failed to include the hourly rates requested in each of those cases, and the Court does not have access to those dockets. Therefore, the Court is unable to compare those hourly rates to the instant case. Notwithstanding this lack of information, however, the Court has little doubt that those plaintiffs also employed the Laffey Matrix without explaining its relevance in the vast majority, if not all, of those cases.

[4] Even though Defendant offered the State Bar of Michigan's 2011 Economics of Law Practice survey, the Court was unable to verify the purported "average rates for practitioners with comparable experience and skills" of $275 and $250 without more specific guidance. *See* Resp. in Opp'n to Pl.'s Pet. for Attorney's Fees 11, ECF No. 19. In any event, the Court believes that the most recent survey is more accurate because it reflects the current state of, for example, inflation and cost of living.

FMLA case). According to this survey, attorneys who practice "Consumer Law" charged an average hourly rate of $321.00 in 2013. STATE BAR OF MICH., 2014 ECONOMICS OF LAW PRACTICE: ATTORNEY INCOME AND BILLING RATE SUMMARY REPORT 6 (2014). As previously discussed, neither party has offered a tenable reason to depart from the average rate. Furthermore, the billing survey states that attorneys with 14- and 21-years experience charged $4.00 less and $27.00 more per hour, respectively, than the general overall average rate ($260.00 and $291.00, respectively, vs. $264.00). *Id.* at 4. Therefore, after adjustment for years of experience, Plaintiffs may claim rates of $348.00 for Smith and $317.00 for Marco.

Other than a bald request to reduce the paralegal's hourly rate, Defendant has not specifically disputed Plaintiffs' claimed rate of $115.00 per hour. *See* Resp. in Opp'n to Pl.'s Pet. for Attorney's Fees 10-12, ECF No. 19 ("[T]he Court should reduce . . . the corresponding hourly rate for . . . paralegals to . . . $100 . . . ."). Furthermore, the claimed rate is in line with recent rates for paralegals in this State. *See* NAT'L ASS'N OF LEGAL ASSISTANTS, 2013 NATIONAL UTILIZATION AND COMPENSATION SURVEY REPORT 3, 9 (2013). Therefore, the Court accepts Plaintiffs' claimed paralegal rate of $115.00.

### B. Reasonable Number of Hours

Defendant argues that Plaintiffs "should not . . . be awarded any additional fees for preparing the fee petition" because they did not engage in "good faith efforts to resolve the fee dispute without court intervention." Resp. in Opp'n to Pl.'s Pet. for Attorney's Fees 9-10. However, this argument fails because Defendant failed to offer any specific facts demonstrating Plaintiffs' alleged lack of good faith—Defendant merely concluded in passing that "Plaintiffs' counsel patently <u>refused</u> to provide their time records prior to filing the fee Petition" and that

10

"[s]uch actions do not evidence good faith . . . ." *Id.* (emphasis in original).  Defendant has not

provided sufficient evidence to warrant excluding fees associated with this petition.

Were recovery of attorney's fees only discretionary under the FDCPA, Defendant would

not be entitled to any reduction in hours because it failed to carry its burden of justifying such a

decrease.  *See U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 413 (2d Cir. 1989)

("[A] party advocating the reduction of the lodestar amount bears the burden of establishing that

a reduction is justified.").  Specifically, Defendant failed to present legal authority to guide the

Court in evaluating whether Plaintiffs' claimed hours qualify as, *inter alia*, reimbursable tasks,

tasks that are "needless" or "excessive," or "extravagances" that "cannot be foisted upon

Defendant without explanation."  However, as with Plaintiffs, Defendant's request is saved by

the mandatory language of the FDCPA.

It is well-settled that purely clerical tasks, even performed by a paralegal, cannot be

included in an award of attorney's fees.  *B & G Min., Inc. v. Dir., Office of Workers' Comp.*

*Programs*, 522 F.3d 657, 666 (6th Cir. 2008).  *See generally Current ABA Definition of Legal*

*Assistant/Paralegal*, A.B.A., http://www.americanbar.org/groups/paralegals/resources/current_

aba_definition_of_legal_assistant_paralegal.html (last updated Aug. 14, 2008) ("A legal assistant

or paralegal is a person, qualified by education, training or work experience who is employed or

retained by a lawyer, law office, corporation, governmental agency or other entity and who

performs specifically delegated *substantive legal work* for which a lawyer is responsible.")

(emphasis added).  Looking at Plaintiffs' attorneys' billing log, the Court has identified the

following tasks (in emphasis) that are presumably clerical, and therefore non-reimbursable:

(1)  Nov. 21, 2013—Paralegal—0.4 hours reduced to 0.1 hours—*Open file in*
     *database*; *diarized events in system*; *created client file*, *checked county and*
     *court filing information*.  Researched Defendant location information and
     obtain service address for summons.

(2)   Nov. 25, 2013—Smith—0.4 reduced to 0.3—*Received back signed retainer*; Prepared Opening File Instruction Sheet providing claims to bring and services performed.

(3)   Dec. 4, 2013—Smith—0.2 reduced to 0.1—*Received additional documents and information from client*; *updated file with information* and determine any necessary action to be taken.

(4)   Jan. 3, 2014—Smith—0.2 reduced to 0.1—*Received additional documents and information from client*; *updated file with information* and determine any necessary action to be taken on file.

(5)   Jan. 15, 2014—Marco—0.9 reduced to 0.8—Receive and review correspondence from client confirming review of pleading and checking for accuracy, review file and initial draft of pleading, make amendments to pleading and prepare final draft, review file for civil filing requirements, prepare all documents for filing, *electronically file pleading and diary for follow up*.

(6)   Jan. 15, 2014—Paralegal—0.2 reduced to 0.1—Receive and review filed copies of pleadings and related documents, *update database with case assignment details*, and *annotate file regarding service of summons*.

(7)   Feb. 3, 2014—Paralegal—0.2 reduced to 0.1—Receive and review affidavit of service from process server for Defendant and review against file to ensure service was effectuated properly.  *Annotate file relative to receiving responsive pleading*.

(8)   Feb. 24, 2014—Paralegal—0.1 reduced to 0—*Received Appearance from Defendant*; *update file with attorney information*.

(9)   Mar. 6, 2014—Paralegal—0.4 reduced to 0.2—Prepare motion to reset scheduling conference and prepare proposed order.  (.2)  *Send to opposing counsel for approval* (.1); *receive confirmation and file*.  *Annotate file*.  (.1)

(10)  Apr. 14, 2014—Marco—0.1 reduced to 0—*Receive correspondence from chambers confirming the cancelation of the scheduling conference*.

(11)  May 16, 2014—Paralegal—0.2 reduced to 0.1—*Receive offer of judgment and annotate file with deadline*.  Prepare stipulation regarding extension of Defendant's discovery.

(12)  May 23, 2014—Marco—0.1 reduced to 0—*Receive entry of Judgment - annotate file for filing of fee petition*.

(13)  June 23, 2014—Marco—0.5 reduced to 0.4—Review draft of fee petition and exhibits (.2); prepare final draft and prepare for filing (.2); *file same* (.1)

Pls.' Ex. C, ECF No. 17-3.  Other than these entries, the Court cannot identify any clearly inappropriate hours and is otherwise willing to assume, for the instant case alone, that Plaintiffs' attorneys have not unethically included unnecessary or inflated hours.  *See Eckerhart*, 461 U.S. at 434 ("Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private

practice ethically is obligated to exclude such hours from his fee submission.").  Therefore, the Court reduces Smith's hours from 3.5 to 2.9, Marco's hours from 13.3 to 12.9, and the paralegal's hours from 3.5 to 2.6.  Accordingly, the Court awards recoverable fees of $1,009.20 for Smith, $4,089.30 for Marco, and $299.00 for the paralegal.

## IV.   CONCLUSION

For the reasons stated above, Plaintiffs' Petition for Attorneys' Fees [#17] is GRANTED IN PART.  The Court awards $5,397.50 for attorney/paralegal fees and $400.00 in costs, for a total award of $5,797.50.

SO ORDERED.

Date:  August 11, 2014                    /s/Gershwin A. Drain
                                          GERSHWIN A. DRAIN
                                          UNITED STATES DISTRICT COURT JUDGE